## McFall v. Rainbow Coal & Feed Co.

March 5, 1946.

J. A. Edge for appellant.

M. A. Dawson for appellee.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

After issual of an execution, dated November 20, 1944, the Sheriff of Woodford County sold, on January 22, 1945, ten acres of real estate owned by appellant, Annie B. McFall, for $850 to satisfy debt, interest and costs of $671.97, growing out of a judgment in favor of appellee, Rainbow Coal and Feed Company.

The Sheriff filed, on January 23, 1945, his report of sale of the property to C. D. McFall, reciting therein his acceptance of two sale bonds payable in three months. After maturity of the sale bonds, both appellant and C. D. McFall filed, on May 14, 1945, what they called "exceptions" to the report of sale. The trial court, on May 16, 1945, overruled the "exceptions" and granted an appeal to this court.

The "exceptions" were based on an alleged lack of appraisal before sale, inadequacy of the sale price, making of the sale for a larger tract of land than necessary, irregularity of the sale, inability of the Sheriff to convey valid title.

On this appeal, the following grounds, which partly overlap the grounds of the "exceptions," are urged for reversal, viz., (1) that the Sheriff sold more than a mere sufficiency of the land to pay the debt, interest and costs and (2) that the Sheriff's report of sale was inadequate in description of the land sold and (3) that the sale price was grossly inadequate and (4) that there was no proper appraisal.

The Sheriff's report of sale set out the time, place and terms of the sale, together with a description, in general terms and by reference to the appraisement report, of the land sold. The appraisement, which was in writing and was filed with the report of sale, embodied a valuation of $900 upon the land in question. The Sheriff made the sale, as stated above, at $850 to C. D.

McFall, who is said to live on the land and to act as an agent for appellant, Annie B. McFall. The report of sale also recites the taking of the two sale bonds, one to the execution creditor, the appellee, for $671.97 for the debt, interest and costs and another to the execution debtor, the appellant, for $178.03 for the excess of the sale price above the debt, interest and cost. It should also be noted that there was filed with the report of sale a "memorandum of statement made at and just before the sale." This memorandum is in writing and it states that the Sheriff made inquiry before the sale as to whether the appellant wished to designate for this sale any particular part of the land under levy; that no designation was made; that the offer was then made to sell any part of the land under levy to any person who would satisfy the amount of the debt, interest and costs; that there was no acceptance of such offer; that the sale of the 10 acres previously mentioned was then made to C. D. McFall for $850.

While there is no statutory provision for the filing of exceptions to a sheriff's sale of land under execution, yet there is a provision under KRS 426.320 for the filing of motions to set aside such sales within a year upon grounds of fraud or collusion. And we have heretofore given broad interpretation to that statutory provision by treating so-called "exceptions" as motions and by giving consideration to any and all objections raised therein touching the legality of such sales. Feltner v. Colwell, 294 Ky. 581, 172 S. W. 2d 219.

Appellant's first contention is that the Sheriff made this sale for more than the face of the debt, interest and costs. It is true that the Sheriff sold appellant's land for $178.03 more than the exact amount of the debt, interest and cost. But appellant obtained the benefit of the excess by virtue of the sale bond in her favor for that exact amount. Moreover, the memorandum filed with the report of sale shows that the Sheriff offered to sell any amount of appellant's land for the exact amount of the debt, interest and cost to any willing bidder. But his offer was not accepted. The Sheriff was not a land surveyor and the intention of the law has never been that a sheriff must stop a sale and measure off exactly the quantity of land necessary to produce the precise amount of the debt, interest and cost. The more sensible and logical method is for a sheriff to

make just the kind of offer that was made in this case, that is, an offer to sell any part of the land under levy to any purchaser who may be willing to satisfy the debt, interest and cost. This Sheriff appears to have correctly followed that method.

Appellant's second contention is that the Sheriff's description of the land sold is inadequate. We find no merit in that contention, because our examination of his description indicates it is clearly sufficient to identify the land. The Sheriff's description refers to the appraisement filed with the report of sale, and the appraisement itself describes the land's location by creek, county, state, adjoining lands, by metes and bounds, and then by cutting off a 10 acre square on the north side and joining certain named landowners. Of course, if the purchaser of this land is dissatisfied with its description and chooses to perfect it at his own expense, there is no reason why he could not employ his own land surveyor and have this land described by still more specific metes and bounds and also by a surveyor's plat, all of which could then be incorporated in a deed for the Sheriff's signature and acknowledgment at the proper time. But this is a matter that addresses itself to the meticulosity of this purchaser.

Appellant's third contention is that the sale price was grossly inadequate. We have often held that inadequacy of sale price on execution sale is not per se a sufficient ground for setting aside such a sale. Kitchen, Whitt & Co. v. Fannin, 273 Ky. 62, 115 S. W. 2d 325. It may be pointed out, whether the sale price was adequate or inadequate, the appellant's land brought more than 90 percent of its appraised value as determined under oath by two disinterested housekeepers of Woodford County.

Appellant's fourth and last contention is that there was no proper appraisal. But the appraisement is in this record and we see nothing improper about it. It speaks for itself and eloquently argues its own merits, which seem to be sufficient to sustain this appraisement in every respect and detail. There is an old saying that what you yourself really are makes an appeal one thousand times more potent than what any one may attempt to say about you. So, in the instance of this appraisement, which is in writing and in the usual form

724

and appearance of appraisements, we find in its own black and white presentment more argument as to actualities than we find in any declaration of the worthy briefs of the attorneys of record. The poet, after having dreamily eulogized his old sweetheart at length, then said, "And I greet the living presence of that old sweetheart of mine"—a reality before his very eyes. Now in this case, we turn the pages of the record and greet the sufficient reality of the appraisement before our comprehending eyes. Nothing more need be said.

Wherefore, seeing no error to the prejudice of the substantial rights of the appellant, the judgment is affirmed.